No. 22-2566

# In the
# United States Court of Appeals
# for the Seventh Circuit

---

TAMICA SMITHSON,
*Plaintiff-Appellant,*

v.

LLOYD AUSTIN,
SECRETARY OF DEFENSE, IN HIS OFFICIAL CAPACITY,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-03021-JRS-MJD — Hon. James R. Sweeney II, *Judge.*

---

## BRIEF OF THE APPELLEE

---

ZACHARY A. MYERS
United States Attorney

Rachana N. Fischer
Assistant United States Attorney

Attorney for the Appellee
Lloyd Austin, Secretary of Defense

United States Attorney's Office
10 W. Market Street, Suite 2100
Indianapolis, IN 46204
(317) 226-6333

# TABLE OF CONTENTS

**Page No**.

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUES........................................................... 2

STATEMENT OF THE CASE .............................................................. 3

SUMMARY OF THE ARGUMENT ..................................................... 11

ARGUMENT ...................................................................................... 12

I.     Legal Standard......................................................................... 12

     A.    Standard of Review........................................................ 12

II.    Summary Judgment Is Proper on Smithson's Reasonable
Accommodation Claim ...........................................................12

     A.    Smithson Was Not a Qualified Individual with a Disability....... 12

     B.    DoDEA Provided Smithson a Reasonable Accommodation......... 18

III.   Smithson's Disability Discrimination Claim Also Fails.........................22

     A.    Smithson Was Not a Qualified Individual with a Disability....... 22

     B.    Being Required to Follow DoDEA's Sick Leave Policy Is Not
an Adverse Employment Action Based on Disability...................23

CONCLUSION................................................................................. 26

# TABLE OF AUTHORITIES

**Cas**es                                                                        **Page No.**

*Barton v. Zimmer, Inc.*, 662 F.3d 448 (7th Cir. 2011)......................................23

*Basden v. Pro. Transp., Inc.*, 714 F.3d 1034 (7th Cir. 2013) ..........................13

*Basith v. Cook Cnty.*, 241 F.3d 919 (7th Cir. 2001).........................................15

*Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565 (7th Cir. 2019)...........................13

*Bush v. Am. Honda Motor Co.*, 227 F. Supp. 2d 780 (S.D. Ohio 2002) ...........24

*Campbell v. Henderson*, No. 00 C 6837, 2002 WL 1732361
     (N.D. Ill. July 26, 2002) ................................................................................25

*Coffey-Sears v. Lyons Twp. High Sch. Dist. 204*, No. 15-CV-08642,
     2017 WL 1208439 (N.D. Ill. Mar. 31, 2017)...........................................20, 24

*Dilettoso v. Potter*, No. CV 04-0566-PHX-NVW, 2006 WL 197146
     (D. Ariz. Jan. 25, 2006) ................................................................................24

*E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943 (7th Cir. 2001)...............18

*Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*,
     601 F.3d 674 (7th Cir. 2010).........................................................................12

*Hottenroth v. Vill. of Slinger*, 388 F.3d 1015 (7th Cir. 2004) ........................12

*Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*,
     201 F.3d 894 (7th Cir. 2000)....................................................................13, 19

*Nowak v. St. Rita High Sch.*, 142 F.3d 999 (7th Cir. 1998)...........................13

*O'Neal v. City of Chicago*, 392 F.3d 909 (7th Cir. 2004) ................................24

*Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).....................24

*Ribando v. United Airlines, Inc.*, 200 F.3d 507 (7th Cir. 1999)......................23

ii

*Smithson v. Austin*, No. 1:21-cv-02193-JRS-MJD (S.D. Ind.) ......................... 16

*Swain v. Wormuth*, 41 F.4th 892 (7th Cir. 2022) ............................................ 22

*Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478
(7th Cir. 2014) ............................................................................................ 13

*Timmons v. Gen. Motors Corp.*, 469 F.3d 1122 (7th Cir. 2006) ...................... 24

*US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) ...................................... 20, 21

*Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538
(7th Cir. 1995) ............................................................................... 14, 15, 18

*Waggoner v. Olin Corp.*, 169 F.3d 481 (7th Cir. 1999) ................................... 18

*Yochim v. Carson*, 935 F.3d 586 (7th Cir. 2019) ......................... 13, 14, 19, 20

## Statutes

42 U.S.C. § 12111(8) ......................................................................................... 13

# JURISDICTIONAL STATEMENT[1]

The jurisdictional statement of Plaintiff-Appellant Tamica Smithson is

complete and correct.

---

[1] Throughout this brief, the Secretary of Defense will make the following references: (ECF = District Court Docket Number) and (A. Br. = Plaintiff-Appellant's Brief).

## STATEMENT OF THE ISSUES

1.     Was summary judgment proper where Smithson was not a qualified individual with a disability because Smithson admitted that being present during school hours was an essential function of her position as a high school teacher and because her admission was supported by the school's evidence?

2.     Did the Department of Defense Education Activity reasonably accommodate Smithson by allowing her to be absent from her teaching job up to two hours a day, but requiring her to use sick leave?

## STATEMENT OF THE CASE

### I.     Smithson's Employment with the Department of Defense Education Activity

The Department of Defense Education Activity (DoDEA) operates 160 schools across the globe to provide an education for children of military families.  [ECF 35-2, at ¶ 1.]  Tamica Smithson joined DoDEA as a teacher in August 2004 and transferred to Vilseck High School in Vilseck, Germany, in 2006.  [*Id.* at 25:12-15; 22:13-14; 26:6-12.]  She is licensed to teach biology, chemistry, and general science.  [ECF 35-1, at 22:13-14.]

### II.     Smithson's Previous Reasonable Accommodations

Smithson first applied for a reasonable accommodation in 2010.  [ECF 35-1, at 194:5-7; ECF 35-11, at DODEA000221 – DODEA000223.]  In her 2010 reasonable accommodation application, she wrote, "some mornings I tend to move more slowly as a result of severe migraines." [ECF 35-11, at DODEA000222.]  She stated that she "only need[s] a little extra time to prepare myself for work in the mornings."  [*Id.*]  As an example, she suggested that if she showed up 15 minutes late, she could stay 15 minutes longer at the end of the day.  [*Id.*]

When she applied for a reasonable accommodation in 2010, she represented to the school that she would not be late every morning and that she used an example of a 15-minute flex.  [ECF 35-1, at 196:12-197:14;

203:15-21.] She also sent the principal an e-mail stating, "It will not be something that occurs frequently." [ECF 35-19.]

In 2014, Smithson sought additional reasonable accommodations, including immediate classroom relief if she had an anxiety attack and being excused from frustrating situations, like having to deal with irate parents or co-workers. [ECF 35-11, at DODEA000224 – DODEA000227.]

She again requested additional reasonable accommodations in 2015. [ECF 35-11, at DODEA000211 – DODEA000220.] This time, Smithson requested flexible duty reporting time due to migraines, dizziness, nausea, and medication side effects. [*Id.* at DODEA000211.] In response, the principal at the time stated he could not guarantee first period prep because of the school's needs. [*Id.* at DODEA000214.] He also included as part of the approved reasonable accommodations, "Ms. Smithson will notify administration by calling the main office when using the flexible duty reporting time due to the severity of migraines, dizziness and nausea." [*Id.* at DODEA000216.] Although Smithson admitted that her approved reasonable accommodations were in her personnel file, she claimed she was unaware that she was required to call the main office if she was going to be late. [ECF 35-1, at 212:25-10; 215:1-8; 215:21-216:6.]

In 2017, Smithson requested a different course schedule as a reasonable accommodation, submitting medical documentation that she

needed to avoid "boring situations," or her headaches and affective disorder could worsen. [ECF 35-1, at 183:5-17.] Vilseck High School Principal Marc Villarreal offered to switch one or two sections of Biology with Human Anatomy and Physiology, but Smithson refused. [ECF 35-2, at ¶ 22; ECF 35-10; ECF 35-1, at 185:4-11.]

### III.    Smithson's 2018 Reasonable Accommodation Request

In April 2018, Smithson requested another reasonable accommodation to provide her with SynchronEyes software and a Smart Board tablet. [ECF 35-2, at ¶ 25; ECF 35-12.] She stated she needed additional technology because she could now no longer move about the classroom without becoming dizzy. [*Id.*] Principal Villarreal forwarded the request to Laura Tronge, the new Diversity/Disability Program Manager for DoDEA Europe. [*Id.*]

On May 3, 2018, Principal Villarreal e-mailed Smithson to set up a meeting with both her and Ms. Tronge to update the school's records for her reasonable accommodation requests. [ECF 35-2, at ¶ 26; ECF 35-13.] In the ensuing e-mail exchange, Smithson repeatedly questioned whether the meeting was necessary. [ECF 35-13.] She also stated that her condition had worsened since she first applied for reasonable accommodations in 2010. [*Id.*]

Ms. Tronge explained that because Smithson's medical condition may have changed, the school was obligated to periodically review previous reasonable accommodations under the Rehabilitation Act. [ECF 35-13.] As

5

Smithson later admitted, her medical condition had definitely worsened from when she first applied for a reasonable accommodation in 2010. [ECF 35-1, at 227:3-10.] Smithson also later acknowledged that although in 2010 she had used the example of a 15-minute flex in her schedule, that had changed over time. [*Id.* at 228:13-16.] Smithson also admitted that DoDEA was entitled to determine her current medical condition. [ECF 35-1, at 228:9-12 ("Q: And why wasn't your employer entitled to determine your current medical condition? A: My employer was entitled to determine my current medical condition."); *Id.* at 232:15-232:7 ("Q:…Do you believe that your employer was not allowed to review your accommodations? A: Yes, the employer's allowed to review my accommodations.").]

Following Smithson's meeting with Ms. Tronge, Ms. Tronge sent an e-mail noting that many of Smithson's reasonable accommodations might have changed and asked her to provide medical documentation to support her requests. [ECF 35-14.] In response, Smithson submitted a doctor's note requesting "[f]lexible duty reporting time (up to two hour delay)." [ECF 35-20.] Smithson acknowledged that her doctor's request was more than the 15-minute flex she requested in 2010. [ECF 35-1, at 236:9-16.]

On August 6, 2018, DoDEA responded to Smithson's reasonable accommodation request. [ECF 35-11, at DODEA000208 – DODEA000209.] In relevant part, DoDEA approved Smithson to use sick leave for any absence

from school up to two hours, barring any undue hardship to the school schedule. [*Id.*] Smithson believed that after she exhausted her sick leave, she could have begun taking unpaid leave. [ECF 35-1, at 241:14-20.]

## IV.     Smithson's Preemptive Leave Requests

Just a few weeks after receiving DoDEA's reasonable accommodation response, on September 4, 2018, Smithson e-mailed Principal Villarreal that she was pre-emptively taking sick leave every day for the entire school year, stating "each morning, I will report to work after 0800 hours but before my first instructional session." [ECF 35-2, at ¶ 29; ECF 35-15.] In her deposition, Smithson stated that she already knew she would be sick every day. [ECF 35-1, at 248:1-8.]

In response, Principal Villarreal explained that pursuant to DoDEA policy, the minimum increment of leave that a teacher can take is a half-day. [ECF 35-16; 35-17, at 2-2.] DoDEA's leave policy differs from other workplaces because when a teacher is absent, the school must generally retain a substitute. [ECF 35-2, at ¶ 31.] Principal Villarreal also stated, "I am concerned by your comments that you do not expect ever to arrive to school by the start of the duty day at 8:00 a.m. because your medications and medical conditions make it unsafe to do so." [ECF 35-16.] He explained, "In your position as a science teacher at our school, it is essential for you to perform your duties during the established times of the school day when you

7

are on duty. Even if you begin your day with a planning period, you may be needed to receive training, collaborate with colleagues or otherwise conduct ad hoc instruction from the very beginning of the school day." [*Id.*] As Principal Villarreal explained at his deposition, Smithson was a good teacher when she was present, but she could not perform her duties if she didn't come to school. [ECF 44-1, at 15:14-23; 16:6-17:5.]

Smithson herself admitted that teachers sometimes need to collaborate during their planning period. [ECF 35-1, at 252:24-253:7.] She also admitted that it wouldn't be ok if all the teachers worked from home during their planning period. [*Id.* at 253:8-10 ("Q: Would it be ok if all the teachers worked from home during their prep period? A: Well, of course not.").]

Smithson next inquired about the possibility of working from home or shifting her schedule instead of using sick leave. [ECF 35-16.] Principal Villarreal responded that he could not allow her to work from home or shift her duty hours. [ECF 35-18.] As he explained, Smithson's planning period involved collaboration with other faculty and required her to be present at school. [*Id.*] Also, if she was experiencing the symptoms she described, she would not be able to perform her work sufficiently. [*Id.*] Finally, he could not shift her work hours because, "[t]he duty times of the school day are fixed and directly connected to our responsibilities to instruct and supervise students within the established school day." [*Id.*] Principal Villarreal offered to set up

8

another meeting with Ms. Tronge, but Smithson refused. [*Id.*; ECF 35-1, at 257:22-258:5.]

Smithson admitted at her deposition that attendance during school hours is an essential function of being teacher. [ECF 35-1, at 191:16-19.]

## V.     Smithson's Current Position

In 2020, there was a significant demand for virtual schooling because of the global COVID-19 pandemic. [ECF 35-1, at 30:17-5.] Accordingly, in August 2020, Smithson applied for and was given a detail to DoDEA's virtual school. [*Id.* at 26:23-27:14; 30:6-8.] Smithson currently teaches from home and believes that that her accommodations are working. [*Id.* at 27:11-14; 271:13-19.]

## VI.     Proceedings Below

Smithson filed this action alleging a whole host of claims, the majority of which have been abandoned on appeal. [ECF 1.] Following discovery, the district court granted summary judgment in favor of the Secretary of Defense and against Smithson on all of her claims and entered final judgment. [ECF 48, 49.]

Regarding Smithson's reasonable accommodation claim and disability discrimination claims, the district court held that "the evidence here shows that attendance during the first two hours of Smithson's workday was essential." [ECF 48, at 14.] Accordingly, the district court held that

Smithson was not a qualified individual with a disability and granted summary judgment in favor of the Secretary of Defense on Smithson's Rehabilitation Act claims.

This appeal timely followed.

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's decision in all respects. Smithson cannot make out a prima facie case under the Rehabilitation Act for either a reasonable accommodation or disability discrimination claim because she is not a qualified individual with a disability.  To establish that she is qualified, she must be able to show that she can perform the essential functions of the job.  As she admitted below—and as DoDEA's evidence confirms— attendance during the school day is an essential function of being a teacher.  Although she does not acknowledge that fact in her appellate brief, it remains dispositive.

Alternatively, the Court could affirm summary judgment on Smithson's reasonable accommodation claim because the accommodation she received was reasonable.  DoDEA gave Smithson the accommodation she requested, but simply required her to use sick leave.  Smithson's desire for daily paid absences is unreasonable as a matter of law.

Regarding her disability discrimination claim, the Court could affirm because being required to adhere to DoDEA's leave policy does not constitute an adverse employment action and was not based on a disability.

Based on the foregoing, this Court should affirm.

# ARGUMENT

## I.     Legal Standard

### A.     Standard of Review

This Court reviews the district court's grant of summary judgment *de novo*, viewing the record and all reasonable inferences drawn from the record in the light most favorable to the nonmoving party.  *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).

## II.     Summary Judgment Is Proper on Smithson's Reasonable Accommodation Claim

Smithson's reasonable accommodation claim fails because she was not a qualified individual with a disability and because she was provided a reasonable accommodation.  To bring a failure to accommodate claim under the Rehabilitation Act, Smithson must prove (1) she is a "qualified individual with a disability;" (2) the defendant was aware of her disability; and (3) the defendant failed to reasonably accommodate her disability.  *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010).  She cannot meet this burden.

### A.     Smithson Was Not a Qualified Individual with a Disability

Smithson was not a qualified individual with a disability because she admits she could not perform the essential functions of her job.  "A 'qualified individual' is one who 'can perform the essential functions of the employment

position.'" *Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019), *as amended* (Aug. 9, 2019) (quoting 42 U.S.C. § 12111(8)).  Courts "shall give 'consideration . . . to the employer's judgment as to what functions of a job are essential.'"  *Id.*

This Court has repeatedly held that being present during working hours is an essential function of a job.  *See Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("[a]n employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance."); *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 489 (7th Cir. 2014) (regular attendance essential function of job); *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998) (attendance was essential function of a high school teacher); *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000) ("his erratic attendance record made it impossible for him to perform the essential functions of the job").

The Court's recent decision in *Yochim v. Carson*, 935 F.3d 586, 592 (7th Cir. 2019), is instructive.  In *Yochim*, a federal employee claimed an agency failed to accommodate her when it denied her request to telework full-time for one month and later for three to five days a week for six months.  *Id.*  The Court held that the plaintiff's requests were not "reasonable on their face." *Id.*  As the Court explained, there was a "general consensus among courts

that jobs often require face-to-face collaboration." *Id.* (internal quotation omitted). Because collaboration was an essential function of the plaintiff's job, the Court affirmed summary judgment on her reasonable accommodation claim. *Id.*; *see also Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995) ("Generally, therefore, an employer is not required to accommodate a disability by allowing the disabled worker to work, by himself, without supervision, at home.").

Similarly here, Smithson was a teacher working at a high school with fixed hours. As Principal Villarreal explained, Smithson was expected to use her planning period to collaborate with others or conduct ad hoc instruction when school was in session. [ECF 35-16.] She could not perform her duties when she was not present. [ECF 44-1, at 15:14-23; 16:6-17:5.]

Furthermore, Smithson herself admitted that attendance during school hours is an essential function of being a teacher, which is dispositive of her claim. [ECF 35-1, at 191:16-19.] She also acknowledged that it would not be acceptable for all teachers to work from home during their planning periods. [*Id.* at 253:8-10.]

In short, Smithson could not perform the essential functions of her job. She therefore was not a qualified individual with a disability, and her reasonable accommodation claim begins and ends there.

Smithson argues that the Court "rubber stamped" DoDEA's evidence

that attendance was an essential function of being a teacher.  [A. Br. 12.]  But

Smithson fails to mention that she admitted that attendance was an

essential function of her job. [ECF  35-1, at 191:16-19; 252:24-253:7; 253:8-

10.]  Indeed, even though the district court specifically pointed out that

Smithson failed to address her admission that attendance was an essential

function of her job, she again failed to address her admission on appeal.

[ECF 48, at 14 ("Despite DoDEA emphasizing Smithson's admission that

attendance is essential in its opening brief, (Def.'s Br. 33, ECF 36), Smithson

did not respond to, or otherwise attempt to diminish, this point in her

response.").]

Smithson also argues that Principal Villarreal never told her that

collaboration and training were important parts of her job before she filed the

instant lawsuit.  [A. Br. 15.]  But this argument is belied by the evidence,

which show that Principal Villarreal explained at length the importance of

collaboration when Smithson requested for the first time to be absent up to

two hours a day.  [ECF 35-16; 35-18.]  And even if DoDEA had been overly

generous about allowing Smithson to be absent in the past, it should not be

penalized for going beyond the Rehabilitation Act's requirements.  *See Basith*

*v. Cook Cnty.*, 241 F.3d 919, 930 (7th Cir. 2001) (absent independent evidence

that a function was not essential, refusing to punish employer for going

beyond the ADA's requirements); *Vande Zande*, 44 F.3d at 545 (government

agency should not be "punished for its generosity" if it goes further than the law requires to accommodate an employee).

Smithson also argues that she could have collaborated with her colleagues outside her prep period.[2]  [A. Br. 11.]  But Principal Villarreal testified that it would have been impossible for Smithson to collaborate to the same extent outside of her prep period.  [ECF 44-2, at 135:14-18 ("Q: Do you know if there were alternate times that Ms. Smithson used for the collaboration you're referring to?  A: I know that wouldn't be possible because she is teaching all the other hours."; 135:24-136:12 ("Q:  And my question is: Do you know if she engaged other educators and collaborated with them, other than the first – A: She may have.  But what I'm trying to explain – Q: That's what I'm asking, sir.  A: That would be impossible to replicate the

---

[2] The claim that her colleagues could have collaborated with her during her teaching hours is striking, given that Smithson (unsuccessfully) alleged in the district court that her colleagues created a hostile work environment when they entered her classroom or walked behind her desk to discuss school-related matters when she was teaching.  [*See, e.g.*, ECF 35-1, at 61:10-18 ("So, you know, anything I filed saying that someone has walked behind my desk or interrupted my class, which is harassment – which I view as being harassment because of the amount of times that they are doing this during the day while I am working, being assaulted, you know, that's the reason why I made the statement.").]  Smithson also filed a second lawsuit, again alleging that colleagues entering her classroom to discuss school-related issues constituted a hostile work environment.  *See Smithson v. Austin*, Case No. 1:21-cv-02193-JRS-MJD (S.D. Ind.), at ECF 1, ¶ 21 ("Interruptions during instruction continued through the acts of numerous colleagues after Plaintiff made several pleas for administration to put an end to the distractions.").

training that happened.  We had guest speakers in our community.  Our superintendent led one of the sessions.  Where she may have collaborated with other colleagues to see what she missed, I believe she did.  She's a conscientious teacher.  Again, I have a lot of respect for Ms. Smithson, but there's no way to replicate specifically what happened if you missed that training time when training happened.").]  Smithson simply ignores this testimony.

Finally, Smithson argues that she had the "same" accommodation for years.  [A. Br. 15.]  But this claim is not supported by the record.  When, Smithson first requested a reasonable accommodation in 2010, she represented that she "only need[ed] a little extra time to prepare myself for work in the mornings."  [ECF 35-11, at DODEA000222.]  As an example, she suggested that if she showed up 15 minutes late, she could stay 15 minutes at the end of the day.  [*Id.*]  At the time she made the request, she sent the principal an e-mail that stated, "It will not be something that occurs frequently."  [ECF 35-19.]

By contrast, when she requested a reasonable accommodation in 2018, she submitted new medical documentation stating that she needed to come in up to two hours late.  [ECF 35-20.]  Both at the time she made the 2018 request and at her deposition, Smithson admitted that her condition had worsened from the time she first made the request in 2010.  [ECF 35-13; ECF

35-1, at 227:3-10.]  Given that Smithson was now asking to be absent up to two hours a day, she cannot claim that she was requesting the same accommodation.

Based on the facts, legal precedent, and Smithson's own admission, attendance during school hours was an essential function of being a high school teacher.  Accordingly, the district court correctly determined that Smithson was not a qualified individual with a disability.

### B.    DoDEA Provided Smithson a Reasonable Accommodation

Alternatively, the Court could affirm because DoDEA reasonably accommodated Smithson, even though it was not required to do so.  Smithson could take sick leave when she needed to be absent, which met Smithson's stated medical need of being absent up to two hours a day.

To the extent that Smithson claims that she should have been allowed to be absent as much as she wanted without using sick leave, her argument is unavailing.  The Court has previously held that requests for unlimited leave are not reasonable.  *See Vande Zande*, 44 F.3d at 544 (rejecting claim that employee should not have to use sick leave for time she could not be in the office); *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 950 (7th Cir. 2001) ("This court has held that similar requests for unlimited sick days, if needed, without being penalized, are not reasonable as a matter of law.") (internal quotation omitted); *Waggoner v. Olin Corp.*, 169 F.3d 481, 485 (7th Cir. 1999)

("She simply wanted to miss work whenever she felt she needed to and apparently for so long as she felt she needed to.  As a matter of law, that request in this context was not reasonable"); *Jovanovic*, 201 F.3d at 900 n.9 ("the only imaginable accommodation would be an open-ended schedule that would allow Jovanovic to come and go as he pleased…we thus reject such a schedule as an unreasonable accommodation under the circumstances of this case.") (internal quotation omitted); *Yochim*, 935 F.3d at 591 ("Yochim has never explained why HUD's approval of regular sick leave to attend physical therapy appointments was inadequate.").  Smithson's desired accommodation of being allowed to show up late every day without taking sick leave is not reasonable as a matter of law.

Smithson also argues that she was never required to use sick leave when she first requested a reasonable accommodation in 2010.  But at that time, Smithson represented that her absences would be brief and infrequent. [ECF 35-11, at DODEA000222; ECF 35-19.]  Under the terms of DoDEA's leave policy, "the supervisor may excuse infrequent absences of up to one-half day without charge to leave if the supervisor determines that the employee's reasons for being late are adequate."  [ECF 35-17, at 7.]  By contrast, in 2018, Smithson requested to be absent up to two hours every single day.  [ECF 35-15; 35-20.]  Under the plain terms of the DoDEA leave policy, the supervisor did not have discretion to excuse these daily hours-long absences.

Smithson next argues that sick leave cannot be an accommodation because it is provided to all employees. But the EEOC has specifically advised that employers are not required to provide additional paid leave to an employee seeking a reasonable accommodation. *See Coffey-Sears v. Lyons Twp. High Sch. Dist. 204*, No. 15-CV-08642, 2017 WL 1208439, at *9 (N.D. Ill. Mar. 31, 2017) ("[a]n employer does not have to provide paid leave beyond that which is provided to similarly-situated employees.") (quoting https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#leave). Similarly, this Court has rejected the argument that an employer must provide an accommodation beyond the sick leave that is available to all employees. *Yochim*, 935 F.3d at 591 ("Yochim has never explained why HUD's approval of regular sick leave to attend physical therapy appointments was inadequate."). DoDEA was not required to give Smithson more paid sick leave than her colleagues.

Although Smithson relies on *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), that case is inapposite. In *Barnett*, the Supreme Court held that an employer was *not* required to accommodate an employee if doing so would violate a seniority system. *Id.* at 406. While the Court acknowledged that there might be some instances where an employer had to change a neutral policy to accommodate an employee, such as moving an office location or increasing a furniture budget, it held that seniority was so fundamental to

20

employment that an accommodation that would require an employer to upend seniority rules was generally unreasonable. *Id.* at 397-98, 405.

Similarly, as discussed above, attendance during school hours is an essential function of being a teacher. Smithson wasn't asking for modified furniture or a different office, she was asking to change the very terms and conditions of her employment to be given unlimited paid leave. Such an accommodation is simply not reasonable.

Smithson also argues that because DoDEA allowed her to take paid sick leave, it would not have faced any hardship if it had simply allowed her to be absent up to two hours every day. But this argument ignores the fact that paid sick leave is limited. The accommodation Smithson is seeking, unlimited paid[3] daily absences from work, places an undue financial burden on DoDEA and is unreasonable as a matter of law.

Finally, DoDEA allowed Smithson to work from home when DoDEA's needs changed due to the pandemic and the implementation of virtual schooling. The fact that DoDEA accommodated Smithson when it could do so and still fulfill its mission demonstrates its good faith in accommodating Smithson.

---

[3] Smithson made clear in her deposition that she would not have been willing to work a part-time schedule where she came in late and was paid only for the hours that she was present and working at the school. [ECF 35-1, at 259:6-8.] Instead, she is demanding to be paid for her daily absences.

Because the evidence shows that DoDEA provided Smithson an accommodation that met her stated medical need, the Court could affirm on that ground as well.

## III.   Smithson's Disability Discrimination Claim Also Fails

Smithson's disability discrimination claim likewise fails because she was not a qualified individual with a disability and also because she did not experience an adverse employment action.  "To prove a claim of disability discrimination under the Rehabilitation Act, a plaintiff must show that: (1) he is disabled, (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) he suffered an adverse job action "'solely by reason of ... his disability.'"  *Swain v. Wormuth*, 41 F.4th 892, 899 (7th Cir. 2022) (quoting 29 U.S.C. § 794(d)).  "The 'solely by reason of' causation standard is stricter than the causation standard in Title I of the ADA, which the Rehabilitation Act otherwise incorporates for its liability standards."  *Id.*

### A.    Smithson Was Not a Qualified Individual with a Disability

As previously discussed, Smithson was not a qualified individual with a disability.  *See* Section II.A.  Accordingly, her disability discrimination claim fails at the outset.

**B.     Being Required to Follow DoDEA's Sick Leave Policy Is Not an Adverse Employment Action Based on Disability**

Even if Smithson could establish that she was a qualified individual with a disability, the Court could also affirm because she did not experience an adverse employment action.   To constitute an adverse employment action, an action must be materially adverse—more than a mere inconvenience or an alteration of job responsibilities. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 511 (7th Cir. 1999).

The Court has articulated three general categories of materially adverse employment actions: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011).

Smithson argues that she was subjected to disability discrimination because she was required to use sick leave when she was absent due to illness.  [A. Br. 19.]  But far from changing the terms of her employment, DoDEA was simply asking her to adhere to them.  Furthermore, as discussed above, the EEOC has specifically advised that employers are not required to give an employee seeking a reasonable accommodation additional paid leave.

*See Coffey-Sears*, 2017 WL 1208439, at *9.  Smithson cannot characterize a permissible workplace practice as "adverse" simply because she doesn't like it.  *See O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004) ("not everything that makes an employee unhappy is an actionable adverse action.").

The cases Smithson cites do not advance her claim.  Each involves a major alteration in the terms and condition of employment, such as a demotion or placement on involuntary leave.  *See Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1128 (7th Cir. 2006) (employee placed on involuntary leave); *Dilettoso v. Potter*, No. CV 04-0566-PHX-NVW, 2006 WL 197146, at *8 (D. Ariz. Jan. 25, 2006), *aff'd*, 243 F. App'x 269 (9th Cir. 2007) (employee placed administrative leave); *Bush v. Am. Honda Motor Co.*, 227 F. Supp. 2d 780, 787 (S.D. Ohio 2002) (employee demoted).  Here, the purported adverse employment action is simply being required to comply with DoDEA's established leave policy.

Furthermore, to prove discrimination, Smithson must provide evidence that she was treated less favorably solely because of her disability.  *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).  But here, she was treated exactly the same as all other employees: she was required to use sick leave when she was out sick pursuant to DoDEA policy.  Being required to adhere to DoDEA's leave policy cannot be considered discriminatory.  *See,*

24

*e.g., Campbell v. Henderson*, No. 00 C 6837, 2002 WL 1732361, at \*7 (N.D. Ill. July 26, 2002), *aff'd sub nom. Campbell v. Potter*, 57 F. App'x 267 (7th Cir. 2003) (rejecting retaliation claim when employee was required to comply with sick leave policy applicable to all employees).

**CONCLUSION**

For the reasons stated above, the judgment of the district court should

be affirmed.

Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

By:    /s/ *Rachana N. Fischer*
Rachana N. Fischer
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE IN ACCORDANCE WITH CIRCUIT RULE 32(c)

The foregoing BRIEF OF THE APPELLEE complies with the type volume limitations required under Circuit Rule 32(c) in that there are not more than 14,000 words using monospaced type in the brief, that there are 5,266 words typed in Microsoft Word word-processing this 2nd day of February, 2023.

/s/ *Rachana N. Fischer*
Rachana N. Fischer
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on February 2, 2023, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the

Seventh Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the CM/ECF system to the following:

Robin C. Clay
Curlin & Clay Law
rclay@curlinclaylaw.com
Attorney for Plaintiff-Appellant

/s/ *Rachana N. Fischer*
Rachana N. Fischer
Assistant United States Attorney
Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333