Case No.22-2566

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

TAMICA SMITHSON,

    *Appellant*

v.

LLOYD AUSTIN, Secretary
of Defense, Department of Defense[1],

    *Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana
Case No. 1:20-cv-03021-JRS-MJD
The Honorable James R. Sweeney, II

APPELLANT'S REPLY BRIEF

Robin C. Clay
*Counsel of Record*
Curlin & Clay Law, Association of Attorneys
8510 Evergreen Avenue, Suite 200
Indianapolis, IN 46240
(317) 202-0301
rclay@curlinclaylaw.com

---

[1] The original Complaint [Dkt. 1] originally identified Chris C. Miller, Acting United States Secretary of Defense, Dept. of Defense, as the Defendant. On January 22, 2021, Lloyd Austin was sworn in as the new Secretary of Defense, so subsequent filings substituted Lloyd Austin as the agency official. The District Court opinion identified the parties of the original complaint.

TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………………..1

TABLE OF AUTHORITIES……………………………………………………………2

INTRODUCTION……………………………………………………………………3

ARGUMENT………………………………………………………………….......3

    I.     DODEA FAILS TO ADDRESS SMITHSON'S ABILITY TO PERFORM THE ESSENTIAL FUNCTIONS WITH ACCOMMODATIONS…………………………………………………..3

          A.  Attendance………………………………………………………………..3

          B.  Collaborating with Peers and Attending Training……………………..7

    II.    DODEA REVOKED SMITHSON'S REASONABLE ACCOMMODATIONS………………………………………………………8

    III.   SMITHSON SUFFERED AN ADVERSE EMPLOYMENT ACTION…..9

CONCLUSION………………………………………………………………………10

CERTIFICATE OF COMPLIANCE……………………………………………………11

# TABLE OF AUTHORITIES

Cases                                                                                                          Page

*Basith v. Cook County*, 241 F.3d 919, 924 (7th Cir. 2001)……………………………..5, 6

*EEOC v. Yellow Freight,* 253 F.3d 943, 948 (7th 2001)……………………………….4

*Grimes v. Union Planters Bank,* 2004 U.S. DIST. LEXIS 21665………………….4
(S.D. Ind., August 30, 2004)

*Kerstin v. Wal-Mart Stores, Inc*., 250 F.3d 1109, 1115 (7th Cir. 2001)…………….9

*Vande Zande v. State of Wisc Dept of Admin,* 44 F.3d 538 (7th Cir. 1995)………...6

*Yochim v. Carson,* 935 F.3d 586 (7th Cir. 2019)…………………………………….4, 5

Statutes

42 U.S.C. §12111(8) …………………………………………………………………..3

42 U.S.C. §12111(9)(B)……………………………………………………………….4

42 U.S.C. §12102(2)…………………………………………………………………..4

42 U.S.C. §12112(b)(5)(A)……………………………………………………………9

## **INTRODUCTION**

Tamica Smithson ("Smithson") has proven that she can perform the essential functions of her position, as she has done with an accommodation, since 2010. The Department of Defense Education Activity Office (DODEA) has not demonstrated that Smithson is unable to perform essential functions of her position, nor that continuing her accommodations present an undue hardship. Smithson agrees that attendance is an essential function; however, the definition of a qualified individual includes the ability to perform the essential functions WITH an the accommodation—which Smithson has successfully done. The changes to Smithson's accommodations were not warranted and giving her a benefit she was already entitled to, did not amount to a reasonable accommodation.

## **ARGUMENT**

I. DODEA FAILS TO ADDRESS SMITHSON'S ABILITY TO PERFORM THE ESSENTIAL FUNCTIONS WITH ACCOMMODATIONS

A. Attendance

The DODEA relies heavily on the position that attendance is an essential function, and that Smithson's acknowledgement of attendance as an essential function dooms her reasonable accommodation claim. (DOC 11, Appellee's Br. pg. 14). The sole focus on attendance, without recognizing the ADA's full definition of a qualified individual with a disability is problematic. A qualified individual with a disability is *not* defined as an employee who can perform the essential functions of the position. To be a qualified individual with a disability, Smithson must be able to perform the essential functions of the job, *with or without a reasonable accommodation.* 42 U.S.C. §12111(8)(emphasis added). Smithson is a qualified individual with a disability who can, and has, performed the essential functions of her position with accommodations.

The ADA clearly states that a reasonable accommodation may include, a part-time or modified work schedule. 42 U.S.C. §12111(9)(B). The DODEA improperly equates Smithson's need for a modified work schedule, with a total inability to work. It deems her modified work schedule as synonymous with a complete absence. Nothing could be further from the truth. Smithson did not have any problems with her attendance. In fact, from 2010 until the revocation of her accommodations in 2018, her attendance was predictable, reliable, and consistent. There was nothing erratic or unknown about her attendance. See *EEOC v. Yellow Freight,* 253 F.3d 943, 948 (7th 2001)(ADA does not protect erratic or unexplained absences). Importantly, her supervisor, Marc Villareal, never issued any disciplinary actions to Smithson, including any discipline concerning her attendance. [Dkt. 44-6 at 4, p.9:21-23].

Additionally, Smithson has a long-term, life-long disability. It is reasonable that she would need a permanent modification to her work schedule. In fact, the ADA's definition of a disability requires an impairment that results in substantial limitations—the medical condition must impose permanent or long-term limitations. 42 U.S.C. §12102(2)(*See also Grimes v. Union Planters Bank,* 2004 U.S. DIST. LEXIS 21665 *25 (S.D. Ind., August 30, 2004)("[Plaintiff] must demonstrate that the impairment poses a permanent, or long-term limitation of a major life activity.")). Smithson, with her accommodations, successfully performed the functions of her position.

DODEA relies on the *Yochim* case for the proposition that a plaintiff's request to telework, (and miss several months of work) are unreasonable. [DOC 11, Appellee's Br. p. 13*]. Yochim v. Carson,* 935 F.3d 586 (7th Cir. 2019). In *Yochim*, the plaintiff was allowed to telework several days a week, for several months. *Id*. The department she worked in was restructured, which required Yochim, and several other employees, to work in the office more often. *Id*. The

4

company revoked Yochim's ability to work from home because her job responsibilities and her job description changed when the company restructured her department. *Id*. at 592. Most significantly, Yochim had accumulated performance deficiencies that resulted in a suspension of her ability to telework. *Id.* at 590.

Smithson's case is entirely distinguishable. As an initial matter, Smithson reported to work every day. Unlike Yochim, she did not request to be absent for six months, nor did she ask that her position be converted to a full-time telework position.[2] Like many teachers, Smithson asked to have her planning period as her first period of the day. Unlike Yochim, who asked to telework for everyday for her full shift, and who asked for three to five days off per week (meaning entire weeks off) for six months, Smithson only asked for a reasonable modification to her schedule, that would still require her to report to work daily. The biggest distinction between Smithson and Yochim, is that Smithson has no performance deficiencies. Based on these distinctions, Smithson's request for reasonable accommodations were reasonable.

DODEA also argues that it should not be penalized for going above and beyond the ADA's requirements. Again, DODEA relies on cases that are highly distinguishable from Smithson's case. The *Basith* case is substantially different in that the employer created a new position that eliminated the essential functions of the job. *Basith v. Cook County*, 241 F.3d 919, 924 (7th Cir. 2001). The employee's main functions as a Pharmacy Technician were to deliver and stock medications. *Id*. The employer restructured the employee's job and completely eliminated the main functions of delivering and stocking. *Id*. at 925. The employee later claimed he was entitled to continue working without these main functions. *Id.* The court reasoned that just

---

[2] Smithson, does however, now work from home full-time, as a teacher in the DODEA's Virtual School. [DOC 11, Appellee's Br. p. 9 Section V].

because the job had been restructured to eliminate essential functions, did not mean the employee was allowed to continue working without ever performing the main functions of delivery and stocking- which he could not perform. *Id*. at 930-931.  Teaching is the main, principal function of Smithson's position, and it was never removed. (Dkt. 4401 at 17, Villareal Dep. 17:13-15).  Similarly, to the extent that collaborating and training were essential functions, Villareal admitted that at the time of Smithson's involuntary accommodation change, she was either performing the task because the times had been changed to afternoon, or Smithson had found other ways to accomplish those tasks.

DODEA also relies on *Vande Zande v. State of Wisc Dept of Admin,* 44 F.3d 538 (7th Cir. 1995) as a comparison of how DODEA should not be penalized for going above what is required.  In *Vande Zande*, the plaintiff was a paraplegic who required an extensive amount of costly accommodations. *Id.* The employer, a government agency, obliged many of the plaintiff's requests, including allowing her to work from home on some days, paying her landlord to modify the bathroom in her home, buying adjustable furniture, ordering and paying for a cot, adjusting her attendance for medical appointments, and making changes to the building plans for a locker room at the office. *Id*. at 544. In addition to the numerous accommodations already provided, the plaintiff wanted the employer to allow her to work from home full-time and modify a kitchenette to make it wheelchair accessible—the plans of which had been determined prior to the effective date of the ADA, and despite the availability of alternative accessible sink. *Id*. at 544-545.  The Court concluded that the employer had been more than reasonable and it was not going to require them to do more, nor obligate them simply because it had gone above and beyond in the past.  *Id.*

The DODEA did not go above what was required by the ADA. It did not incur exorbitant costs to accommodate Smithson, it did not remove the principal functions of her position, or modify buildings. It allowed an employee, with years of successful contributions to its school, to modify her work schedule.

### B. Collaborating with Peers and Attending Training

DODEA identified collaborating with peers and attending trainings as essential functions. [Dkt. 44-1 at 17-18]. The collaboration that occurred during the specific planning periods was during Villareal's first (and possibly second) year. [Dkt. 44-2 at 38:22-25; 39:1-9 ("[T]he first year of collaboration for our school…we were doing it during teachers' specific planning times…I believe that was only the first year that I was here, it might have been year one—my first and second year. I don't specifically recall."]. Villareal testified that scheduling collaboration and training times, specifically during the 2016-2017 school year was difficult for everyone, so the school implemented designated collaboration times that occurred in the afternoon. [Dkt 42-2 at 41:17-21; 42:5-20]. Villareal also testified that he never kept track of when Smithson missed any collaboration time. [Dkt. 44-2 at 39:10-13]. Villareal also never indicated that Smithson failed to meet her obligations for training. [Dkt. 44-2 at 37:15-19]. When the collaborations were changed to the afternoon (which would have been school year 2017-2018), Smithson attended without incident. [Dkt. 42-2 at 42:5-20].

Villareal's first and second year would have been school years 2016-2017, and 2017-2018. [Dkt. 44-6 at 3, Villareal Dep. 7:10.] Villareal began his position in August 2016. [Id]. Smithson's change in her reasonable accommodations began in August 2018, school year 2018-2019. Therefore, even if collaboration was an essential function, Smithson was not missing out on collaboration at the time when her reasonable accommodations were changed. Most

7

importantly, there is no evidence of how often, or when Smithson missed any collaborations or trainings, as Villareal never discussed these alleged absences with Smithson, never kept track of them, and never otherwise noted her alleged absence as a deficiency in any manner.

II.     <u>DODEA REVOKED SMITHSON'S REASONABLE ACCOMMODATION</u>

As an initial matter, Smithson never requested daily paid absences, as alleged by DODEA. [DOC 11, Appellee's Br. p.11]. Smithson asked that she be allowed to have her first period as her planning period, just as other teachers did. [See Dkt. 44-2, Villareal Dep. at 40:25, 41:1-3 (Q: "But sir, there were other teachers who had their planning hour in the morning at the first period; isn't that true" A: "Yes it is")]. She asked for the DODEA to continue her flexible reporting time. To the extent that some of that time would have been unpaid, that was never part of anyone's deposition testimony.

In 2018, DODEA approved the use of a flexible duty reporting time (up to 2 hours daily) but required Smithson to use sick leave as part of her accommodation. It claimed that its 1987 Absence and Leave Policy, required Smithson to use her personal sick leave as part of her reasonable accommodation. (DKT. 37-11 ¶ F). The policy also required her to use at least a half day for each time she needed an adjusted schedule. This policy had been in place for all the years that Smithson was consistently granted flexible report to duty time. However, in August 2018, after several years of Smithson using flexible reporting time, including a first period prep time, DODEA insisted that Smithson use her personal sick leave time. DODEA giving Smithson a benefit she, and every other employee already had, was not a reasonable accommodation.

"Granting an employee time off from work or an adjusted work schedule as a reasonable accommodation may involve modifying leave or attendance procedures or policies." DODEA

8

should have modified its 1987 policy to allow Smithson to take time off, as she had done successfully for years. Ironically, DODEA argues that a 2-hour schedule adjustment is unreasonable, yet insists that Smithson take a whole half day off instead.

The ADA requires an employer to make reasonable accommodations for a disabled employee unless doing so would impose an undue hardship on the employer." 42 U.S.C. §12112(b)(5)(A). DODEA argues that providing Smithson with the flexible reporting time presents an undue hardship although they have provided it as an accommodation for the last eight years. Similarly, the DODEA is willing to provide the accommodation (an alleged undue hardship) if Smithson uses her sick time, and stays away for at least a half day, instead of converting her planning period, and allowing possibly an additional hour for her medical condition to adjust. How can one hour be more of a hardship than a half-day? DODEA cannot rely on a hardship argument when they in fact will allow the flexible leave, but simply want Smithson to exhaust her accrued sick time, and use significantly more time off than she needs. DODEA has not presented any evidence to support an undue hardship.

### III. SMITHSON SUFFERED AN ADVERSE EMPLOYMENT ACTION

DODEA claims that Smithson did not suffer an adverse employment action. [DOC 11, Appellee's Br. p. 23]. An adverse employment action includes a material loss of benefits. *Kerstin v. Wal-Mart Stores, Inc.,* 250 F.3d 1109, 1115 (7th Cir. 2001). DODEA required Smithson to use her sick leave as part of her accommodation, applying a policy it had not applied in almost 10 years, and a policy that was made for employees who had not been granted an accommodation. Given Smithson's long-term disability, the use of accrued sick time would substantially affect her ability to work, as she had done successfully with an accommodation for years. The sick

leave requirement was an adverse employment action because it caused Smithson an unnecessary, substantial, and material loss of benefits.

## **CONCLUSION**

For the foregoing reasons, the judgment of the District Court on Defendant's Motion for Summary Judgment must be reversed, and the case remanded to the District Court for trial.

Dated: February 23, 2023     Respectfully submitted,

Tamica Smithson
Appellant

By: *s/Robin C. Clay*
Robin C. Clay
Attorney for Appellants
Curlin & Clay Law, Association of Attorneys
8510 Evergreen Ave Suite 200
Indianapolis, IN 46204
Tel: (317) 202-0301
rclay@curlinclaylaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Rule 32(a)(7) inasmuch as it does not exceed 13,000 words.


Dated:  February 23, 2023              By: *s/Robin C. Clay*
                                       Robin C. Clay
                                       Attorney for Appellant
                                       Curlin & Clay Law, Association of Attorney